**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 20-90-DLB**

**ANTHONY WAYNE BAILEY**                                                    **PLAINTIFF**

**v.**                              **MEMORANDUM OPINION AND ORDER**

**ANDREW SAUL, Commissioner**
**of the Social Security Administration**                              **DEFENDANT**

* *   * *   * *   * *   * *   * *   * *   * *

This matter is before the Court on Plaintiff Anthony Wayne Bailey's Motion for Summary Judgment, (Doc. # 16), pursuant to 42 U.S.C. § 405(g), which allows Mr. Bailey to obtain judicial review of an administrative decision by the Commissioner of Social Security. Defendant Andrew Saul, Commissioner of the Social Security Administration, filed a Cross Motion for Summary Judgment. (Doc. # 20). The Court, having reviewed the administrative record and the parties' motions, and for the reasons set forth herein, affirms the Commissioner's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

On April 22, 2016, Plaintiff Anthony Wayne Bailey filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability as of May 20, 2014. (Tr. 209-210). Plaintiff was forty-seven years old at the onset of the alleged disability that rendered him unable to work. (Tr. 110). Plaintiff's application was denied initially on January 11, 2017, (Tr. 124-125), and upon reconsideration on March 29, 2017, (Tr. 140). At Plaintiff's request, (Tr. 158-159), an administrative hearing was conducted,

(Tr. 68-109), and on March 5, 2019, Administrative Law Judge ("ALJ") Greg Holsclaw found that Plaintiff was not disabled under the Social Security Act and, therefore, not entitled to benefits. (Tr. 10-29). The decision became the final decision of the Commissioner on February 21, 2020 when the Appeals Council denied Plaintiff's request for review. (Tr. 1-6).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)). Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side. *Id.*; *see also Listenbee v. Sec'y*

*of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

### B.    The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.   Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity after May 20, 2014, the onset date of Plaintiff's alleged disability, through his date last insured, December 31, 2018.  (Tr. 15).  At Step Two, the ALJ determined that Plaintiff has the following severe impairments: degeneration of the cervical and lumbar spine, degeneration of the knee, diabetes, carpal tunnel syndrome, and a history of coal workers' pneumoconiosis (CWP)/chronic obstructive pulmonary disease (COPD) in the context of continued smoking against medical advice.  (*Id.*).  However, the ALJ

3

classified Plaintiff's low-grade leukocytosis, anaphylaxis and angioedema secondary to allergic reaction to amoxicillin, and hearing loss/tinnitus as non-severe.  (Tr. 16).  At Step Three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that meet or medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, through the date last insured.  (*Id.*).

The ALJ then determined that Plaintiff possessed the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following limitations:

> [N]o lifting/carrying more than 20 pounds occasionally, 10 pounds frequently; no standing/walking more than six hours out of an eight-hour workday; no sitting more than six hours out of an eight-hour workday; and unlimited pushing/pulling up to exertional limitations.  The claimant could do unlimited balancing, no more than occasional stooping, kneeling, crouching, crawling or climbing ramps or stairs, but no climbing ladders, ropes or scaffolds.  He could do no more than frequent reaching overhead with the right dominant upper extremity and no more than frequent handling or fingering bilaterally.  The claimant could do no work in areas of concentrated heat or cold, no work in areas of concentrated wetness or humidity, no work in areas of concentrated vibration or use of vibrating hand tools, no work in areas of concentrated dusts, fumes, gases or other pulmonary irritants, and no work around dangerous moving machinery or unprotected heights.

(Tr. 17).  The ALJ ultimately concluded at Step Four that Plaintiff cannot perform any of his past relevant work, including that of a mine electrician (Tr. 27), and therefore proceeded to the final step of the required anaysis.

At Step Five, the ALJ concluded that due to Plaintiff's age, education, work experience, and RFC, there were numerous jobs that Plaintiff was able to perform in the national economy through the date last insured.  (*Id.*).  Based on the opinion of a Vocational Expert ("VE"), the ALJ determined that Plaintiff could engage in light and unskilled occupations, such as an inspector, sorter, or bench worker.  (Tr. 28).

Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from May 20, 2014, the alleged onset date, through December 31, 2018, the date last insured.  (*Id.*).

### C.   Analysis

In Plaintiff's Memorandum in Support of his Motion for Summary Judgment, he argues that the ALJ failed to properly evaluate the medical evidence or Plaintiff's subjective complaints of pain, and that the ALJ's disability determination was not supported by substantial evidence.  (Doc. # 16-1 at 2, 12-17).  The Court disagrees.

Plaintiff Bailey's general assertion is that the ALJ failed to consider the entirety of the medical record when making Plaintiff's disability determination.  (*Id.* at 13-17).  Plaintiff contends that the ALJ's decision was not supported by substantial evidence in the record and Plaintiff is unable to perform even sedentary work.[1]  (*Id.* at 16).  In support of this argument, Plaintiff argues that the ALJ disregarded his subjective complaints of pain, the treating source opinion of Nadine Brock, APRN, as well as the opinion of the consultive examiner, Dr. Monderewicz.  (*Id.* at 13-14).  Additionally, Plaintiff argues that the hypothetical residual functional capacity ("RFC") that the ALJ posed to the VE did not accurately portray Plaintiff's limitations as listed in the ALJ's hearing decision.  (*Id.* at 14-

---

[1]    Plaintiff simply states that "[w]hen the record in this case is considered in its entirety, the combined effects of Plaintiff's physical and mental impairments, reflect he could not perform a wide range of even sedentary work on a regular and sustained basis."  (*Id.* at 16).  While Plaintiff provides a number of citations to case law, he makes no attempt to develop his argument that the ALJ's decision was not supported by substantial evidence based on the administrative record. The SSA contends that this failure warrants denial of Plaintiff's Motion for Summary Judgment because the argument is "so underdeveloped as to be considered waived under Sixth Circuit case law."  (Doc. # 20 at 7 (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).  Putting aside the issue of a potential waiver by Plaintiff, the Court still finds that the ALJ's disability determination was supported by substantial evidence.

15).   However, for the reasons explained below, the Court finds that the ALJ's determination of Plaintiff's RFC and disability status was supported by substantial evidence in the record.

RFC refers to "the most [the claimant] can do despite [his] limitations" and should be assessed "based on all the relevant evidence in [the] case record."   20 C.F.R. § 404.1545(a)(1).   Determining a plaintiff's RFC begins with an assessment of his "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."   *Id.*   This includes an evaluation of "statements about what [the claimant] can still do that have been provided by medical sources," as well as statements by the claimant or other persons which describe the claimant's "limitations from [his] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain."   20 C.F.R. § 404.1545(a)(3). So long as an ALJ's determination of disability is supported by substantial evidence in the record, the Court will affirm.   *See Her*, 203 F.3d at 389-90 (citing *Key*, 109 F.3d at 273).

Plaintiff first argues that the ALJ failed to properly consider Plaintiff's complaints of pain.   (Doc. # 16-1 at 13).   In evaluating complaints of pain, the ALJ should consider the claimant's symptoms and the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other evidence."   20 C.F.R. § 404.1529(a).   Further, because "tolerance of pain is a highly individual matter [] a determination of disability based on pain by necessity depends largely on the credibility of the claimant."   *Houston v. Sec. of Health and Hum. Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).   However, the ALJ's assessment of credibility must be supported by the record, which could include reviewing "any medical signs and lab findings, the claimant's own

complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Here, the ALJ characterized Plaintiff's complaints of symptoms as follows:

He testified that his breathing is his most limiting condition.  The claimant stated that this has been an issue for the last four to five years with use of inhalers for the last three years.  His reported medications included Flexeril for his back pain, metformin for diabetes, and multiple breathing treatments, including Spiriva, ProAir, and Symbicort.  He testified that he used one inhaler every day and another one once every other day.  The claimant stated that he has not required use of a nebulizer or oxygen.  He completed a Pain Questionnaire, stating that he has low back pain that radiates into his right leg to his knee, and neck pain.  The claimant reported that this pain occurs three to four times monthly caused by standing or sitting for long periods.  He stated that over-exertion, such as climbing stairs or walking long distances, and temperature extremes exacerbate his breathing issues.  He testified that he could walk for four to five minutes before he is out of breath, and that he could sit for 30 minutes and stand for 35 minutes.  He alleged numbness in his hands and pain in his shoulders with holding his arms overhead.  He further alleged difficulty with holding onto items, but sufficient grip to drive and button clothing.   He testified that he has numbness once a day for about 10 minutes in his right hand.  He reported feeling bad from his diabetes about once every two weeks.  The claimant testified that he helps with household chores, such as folding laundry, washing dishes, and sweeping.  He also testified that he drives once a week.  He stated that he has reduced his cigarette smoking from a half-pack of cigarettes per day, to four to five cigarettes per day.

(Tr. 18) (internal citations omitted).  The ALJ then evaluated a number of physician opinions, as well as medical records including tests, regarding Plaintiff's different complaints.  (Tr. 18-22).  The ALJ ultimately concluded that while Plaintiff's impairments could cause the symptoms described by Plaintiff, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ."  (Tr. 22).  In explaining his conclusion, the ALJ highlighted some inconsistencies in Plaintiff's statements and the

information found in the medical record.  For example, the ALJ pointed out that "although the claimant testified that he was most limited by his breathing problems," a chest x-ray illustrated "no more than mild results for CWP or other breathing problems," pulmonary function tests "did not show more than moderate limitations," and although Plaintiff complains about breathing problems, "he has continued to smoke cigarettes against medical advice."  (Tr. 22-23).  In reference to Plaintiff's complaints about his lumbar spine, degeneration of his right knee, deficits in gait, range of motion, loss of strength, and carpal tunnel, the ALJ opined that medical imaging and physical exams were not consistent with "chronic, limitations attributable to these conditions," and therefore, "greater reductions" in the level of work Plaintiff could perform or additional limitations were not supported by the evidence.  (Tr. 23-24).

Plaintiff's argument that the ALJ failed to take into consideration Plaintiff's complaints of pain is demonstrably untrue.  The ALJ clearly evaluated Plaintiff's complaints of pain, but ultimately decided that they were inconsistent with the medical evidence in the record.  *See Rogers*, 486 F.3d at 248 ("[c]onsistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.").  In making this assessment, the ALJ properly evaluated all the relevant evidence.  *Id.* at 247.  Courts will not second-guess credibility determinations of the ALJ as they are "entitled to considerable deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 242 (6th Cir. 2002).

Next, Plaintiff argues that the ALJ erred by disregarding the treating source opinion of Nadine Brock, APRN, as well as the opinion of the consultive examiner, Dr.

8

Monderewicz.  (Doc. # 16-1 at 13-14).  The SSA has defined three different types of acceptable medical sources: non-examining sources, non-treating (but examining) sources, and treating sources.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  Under § 404.1527(c)(1),[2] the SSA generally "give[s] more weight to the medical opinion of a source who has examined [the claimant] than to the medical opinion of a medical source who has not examined [the claimant]."  Treating source opinions are also "give[n] more weight" because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)."  20 C.F.R. § 404.1527(c)(2).  The ALJ is required to give "good reasons . . . for the weight [he] give[s] [the claimant's] treating source's medical opinion."  *Id.*

     In deciding the appropriate weight to give a treating source opinion, the ALJ should consider "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Fox v. Comm'r of Soc. Sec.*, 827 F. App'x 531, 537 (6th Cir. 2020) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  Further, "[a]n ALJ may not summarily discount a treating-source opinion as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating source opinion."  *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020)  "[W]here the ALJ fails

---

[2]      Plaintiff's application for disability benefits was filed before March 27, 2017.  (Tr. 209-210).  Therefore, the ALJ is required to follow the standards set out in 20 C.F.R. § 404.1527 when evaluating the opinions of medical sources.

to give good reasons on the record for according less than controlling weight to treating sources," reversal and remand is appropriate "unless the error is a harmless *de minimis* procedural violation." *Blakley*, 581 F.3d at 409 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).  A harmless error may be present if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it."  *Id.* (internal quotation marks omitted).

Nadine Brock's opinion as to Plaintiff's limitations consists of a one-page form.  (Tr. 716).  In this form, Ms. Brock opines that Plaintiff's lung nodules, COPD, spinal stenosis, cervicalga, radiculopathy, diabetes, and arthritis all limit Plaintiff's abilities.  *Id.*  She further opines that Plaintiff can only work two hours a day, stand one hour a day, sit one hour a day, would frequently miss work, and suffers from moderate pain.  *Id.*  By contrast, the ALJ concluded that the medical evidence in the record did not show "exam findings that would be consistent with [the] significant level of limitation" found in Ms. Brock's opinion.  (Tr. 26).  Ultimately, the ALJ found Ms. Brock's opinion was "gross[ly] inconsistent[] with the evidence as a whole, including the other medical opinions of record," and therefore little weight was given to her evaluation.  (*Id.*).

When evaluating the opinion of a treating source, an ALJ is required to provide "good reasons" as to why the opinion was assigned a specific weight.  A treating source opinion, like Ms. Brock's, cannot be "summarily discount[ed] . . . as not well-supported by objective findings or being inconsistent with the record without identifying and explaining how the substantial evidence is purportedly inconsistent with the treating source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020).  Similarly, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of

record; there must be some effort to identify the specific discrepancies." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

Here, the ALJ provided multiple explanations as to why Ms. Brock's opinion was deficient. Namely that her opinion conflicted with "her own exam findings," was irreconcilable with Plaintiff's "generally normal gait, strength and tone without atrophy, mild to moderate airway restrictions, and normal musculoskeletal findings," and was inconsistent with Plaintiff's "own testimony that he was able to attend an eight-hour recertification course without accommodations." (Tr. 26). Even if the ALJ did not provide good reasons for the little weight assigned to Ms. Brock's opinion, it would be a harmless error. Ms. Brock's one-page form opinion was "so patently deficient that the Commissioner could not possibly credit it," as it provided no explanation as to why Plaintiff was so limited. *Blakley*, 581 F.3d at 409 (internal quotation marks omitted). Because the ALJ considered Ms. Brock's opinion and gave "good reasons" for assigning it little weight, reversal and remand is not appropriate.

Plaintiff additionally argues that the ALJ failed to properly consider the opinion of the consultive examiner, Dr. Monderewicz, who allegedly contemplated restrictions similar to those imposed by Ms. Brock. (Doc. # 16-1 at 14). However, this assertion is contrary to the administrative record because the ALJ assigned Dr. Monderewicz's opinion "great weight." (Tr. 26). The ALJ reasoned that Dr. Monderewicz's opinion that Plaintiff "had limited bending, stooping, squatting, crawling, and limited ability for heavy lifting" was supported by the source's exam report and other evidence in the record. (*Id.*). Ultimately, the ALJ crafted Plaintiff's RFC to incorporate these limitations. (*See* Tr. 17). In evaluating Dr. Monderewicz's opinion, the ALJ followed the guidelines in 20 C.F.R.

§ 404.1527(c)(1), by giving appropriate weight to an examining source opinion, and even used Dr. Monderewicz's opinion to help craft Plaintiff's RFC.   Therefore, Plaintiff's argument that the ALJ did not consider Dr. Monderewicz opinion is not supported by the record and therefore lacks merit.

Plaintiff also finds issue with the hypothetical RFC posed by the ALJ to the VE during Plaintiff's disability determination hearing.   Plaintiff argues that the hypothetical RFC did not accurately portray Plaintiff's limitations as listed in the ALJ's hearing decision. (Doc. # 16-1 at 14-15).   Plaintiff notes that the difference between the hypothetical RFC posed to the VE, which allows for "limiting pushing and pulling," and the RFC finding in the hearing decision, which allows for "unlimited pushing/pulling."   (*Id.* at 15) (*See also* Tr. 105, 17).   Relying on purported case law from two Sixth Circuit cases, Plaintiff argues that this is a clear error requiring remand.   (*Id.* at 15-16) (citing *Dennard v. Sec'y of Health and Hum. Servs.*, 907 F.2d 598 (6th Cir 1990); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)).[3]

A "slight error attributable to the ALJ's hypotheticals is not reversible error."  *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635-36 (6th Cir. 2016).   However, if a more accurate hypothetical would have resulted in a finding of disability, the error may be grounds for reversal.  *Id*; *Potter v. Comm'r of Soc. Sec.*, 223 F. App'x 458, 463 (6th Cir. 2007).   Here, a slight change in either the hypothetical presented by the ALJ to the vocational expert or in the hearing decision would not have resulted in the ALJ finding

---

[3]      The cases cited by Plaintiff have no relevance to the ALJ's supposed error.   At issue in *Dennard* was whether an ALJ could reconsider a previous administrative determination by the Social Security Administration Secretary that a claimant could not perform his past work.   907 F.2d at 600.   Similarly in *Drummond*, the court found that *res judicata* barred the Social Security Administration from relitigating an issue decided by a previous ALJ.   126 F.3d at 842.

that Plaintiff was disabled.  The limitation the ALJ proposed to the VE—"limited pushing and pulling"—was more restrictive of a limitation than what the ALJ included in the hearing decision—"unlimited pushing/pulling."  The VE opined that there were a number of jobs that existed in the economy that Plaintiff would be able to perform with an even more restrictive RFC than the ALJ ultimately assigned to Plaintiff.  (Tr. 106).  These jobs included that of a light, unskilled, inspector or tester, or a light, unskilled, sorter or packer. (*Id.*).  Because the RFC proposed to the VE was more favorable to Plaintiff than the RFC ultimately assigned in the hearing decision, no reversible error exists.  *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 845 (6th Cir 2005) (when "the hypothetical posited to the VE was more favorable to [the claimant] than the RFC that the ALJ ultimately determined," and substantial evidence supported the decision of the ALJ, reversal and remand was not appropriate).  Ultimately, the Court declines to reevaluate evidence already considered by the ALJ, as substantial evidence supported his decision as to Plaintiff's RFC and disability determination.

## III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 16) is hereby **DENIED**;

(3)    The Commissioner's Motion for Summary Judgment (Doc. # 20) is hereby **GRANTED**;

(4)    This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)   A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 15th day of June, 2021.



**Signed By:**

*__David L. Bunning__*

**United States District Judge**

O:\DATA\SocialSecurity\MOOs\London\20-90 Bailey MOO.docx